**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

August 31, 2020

**By ECF**
Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

*The Court agrees that allowing Mr. Dana to return to Israel to be with his family and to begin the job that awaits him is the best way of ensuring that he resumes a law-abiding life. Accordingly, and with the consent of the Government, the motion is GRANTED. The Clerk of Court is directed to terminate ECF No. 122.*

*SO ORDERED.*

*August 31, 2020*

Re:   **United States v. Eli Dana**
      **14 Cr. 405 (JMF)**

Dear Judge Furman,

The Court sentenced Eli Dana to one year and one day imprisonment and 2 years of supervised release on February 25, 2020. Dkt. No. 101. On March 31, 2020, with the consent of the government, the Court granted Mr. Dana's motion for compassionate release and reduced his prison sentence to time served and imposed a term of 5 months of home incarceration. Dkt. No. 108. Mr. Dana completed his term of home incarceration today. Probation Officer Bourque reports that Mr. Dana was fully compliant with the terms of his home confinement, except for one deviation from his approved destination during an authorized leave from the home, which was addressed with a verbal reprimand and did not reoccur.

We write to the Court to seek permission for Mr. Dana to return to live in Israel. As the Court is aware, Mr. Dana worked and lived there for the past 20 years. In our sentencing materials, we detailed the life that awaits him there—both his livelihood and his children and grandchildren. The Court anticipated such an application at sentencing:

> Let me also state that I am not going to invite, but I imagine there may be an application after Mr. Dana's release with respect to his return to Israel. Let's postpone that to another day. I don't know what his plans are with respect to whether he would propose to remain here or go back to Israel. My point is, in imposing supervised release, I am not precluding the possibility that that would be appropriate. I think we should just defer assessment of that until after his release, at which time I think it would be a better time to evaluate what is the most appropriate course. I think ultimately I would like him to resume a law-abiding life supported by family. I know he has some family here. He has some family in Israel. I know he has a job actually waiting for him in Israel. I don't know what he would do here. So it may well be that I would approve that request. I just thought I would flag that and didn't want the fact that I imposed supervised release to be understood that I wouldn't entertain that sort of application. (Sent. Tr. p. 38-9, at Dkt. No. 103.)

1

That day has now come. Mr. Dana has been able to live in New York because he has been supported by the generosity of his friends and family—but he is eager to return to Israel, where he can support himself. His job in the Bezalel Market is still waiting for him; Mr. Dana worked there 6 days a week from 2009 until his arrest in 2019. Our sentencing submission detailed Mr. Dana's life-long work ethic and his commitment to his job in the open-air market in Tel Aviv. If he is permitted to resume that job, he will work hard every day to support himself financially again.

His children and grandchildren are waiting for him in Israel. Before his arrest, Mr. Dana was a very active grandfather in the lives of his two granddaughters; they have been separated since his extradition and he is eager to reunite with them. Moreover, Mr. Dana's daughter was recently engaged to be married and she is hoping to schedule the wedding as soon as her father can be there to attend in person. Mr. Dana's brothers and sisters and friends and colleagues in Israel are also planning to welcome him with open arms. His life is there waiting for him; there is no life for him in New York.

If this permission is granted, when Mr. Dana first arrives back in Israel, he will stay with family until he secures his own home. His brother has an apartment that Mr. Dana can stay in, and his nephew and sister have also invited him to live with them until he is settled.

Therefore, we propose that Mr. Dana be permitted to move to Israel. I have spoken to the Department of Probation, and understand that if this application is granted, once he is out of the country, Mr. Dana will be treated like those who are deported following their criminal sentences: he will not be supervised while abroad, but the supervision would resume if he returned to the United States within his 2-year term.

The Department of Probation, by Officer Bourque, takes no position on this request. The Government, by Assistant United States Attorney Matthew Hellman, consents to the defendant's application. The Government also understands that the Department of Probation will not actively supervise Mr. Dana when he is outside the United States, but will resume supervision should he return to the United States within the term of supervision imposed.

Thank you for your consideration. We stand ready to address any questions from the Court.

Respectfully submitted,

/s/
Sylvie Levine
Counsel for Mr. Dana